UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ASSET VISION, LLC, an Idaho limited liability company, and DEER VALLEY TRUCKING INC., an Idaho corporaiton,<br><br><br>Plaintiffs,<br><br>v.<br><br>CREG FIELDING, an individual, BRAD HALL, an individual, COLE HALL, an individual, and BRAD HALL & ASSOCIATES, INC., an Idaho corporation,<br><br>Defendants. | Case No. 4:13-cv-00288-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it Brad Hall & Associates, Inc.'s Motion to Dismiss First

Amended Complaint (Dkt. 27).

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

of the claim showing that the pleader is entitled to relief," in order to "give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007).  While a complaint

attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual

allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*. at 557.

The Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court need not accept as true, legal conclusions that are couched as factual allegations. *Id*. Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Providing too much in the complaint may also be fatal to a plaintiff. Dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783,

n. 1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts").

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009.  The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 247 (9th Cir. 1990).  The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007)(citations omitted).

## BACKGROUND

Defendant Creg Fielding, a former employee of Deer Valley Trucking, helped develop source code for tracking, ticketing, and managing oil field trucking services. The source code is called Asset Vision. Plaintiffs allege that they registered the copyright for Asset Vision, and that defendants have infringed on it. Plaintiffs filed their Complaint alleging copyright infringement and related claims on July 2, 2013. They filed their Amended Complaint about a month later. Defendant, Brad Hall & Associates, Inc. ("BH&A") now asks the Court to dismiss the claims against it.

## ANALYSIS

### 1.      Copyright Claim

BH&A first asks the Court to dismiss Plaintiffs' copyright infringement claim. To prevail on a copyright infringement claim, a plaintiff "must demonstrate (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Benay v. Warner Bros. Entertainment, Inc.*, 607 F.3d 620, 624 (9th Cir. 2010) (Internal citations and quotations omitted). For purposes of this motion, BH&A concedes element one – that Plaintiffs have alleged ownership of a valid copyright. BH&A argues only that Plaintiffs have not asserted a valid claim that BH&A copied the constituent elements of the work.

### A.      *Copying*

In most infringement suits, answering the question of whether copying has occurred requires a comparison of the plaintiff's work with the allegedly infringing work to determine whether they are "substantially similar" or "virtually identical," depending on the scope of the plaintiff's copyright. *Mattel, Inc. v MGA Entm't, Inc.*, 616 F.3d 904, 913-14 (9th Cir. 2010). Ninth Circuit precedent on how the Court should address indirect evidence of copying is somewhat disjointed. Some cases indicate that "[a]bsent evidence of direct copying, proof of infringement involves fact-based showings that the defendant had 'access' to the plaintiff's work and that the two works are 'substantially similar.'" *Funky Films, Inc. v. Time Warner Entertainment Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006) (Internal quotation and citation omitted). *See also Shaw v. Lindheim*, 919 F.2d

1353 (9th Cir. 1990). The more recent Ninth Circuit case, *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904 (9th Cir. 2010), also requires an initial finding of "access," and then takes a similar, but somewhat different, approach to the "similarly situated" question.

### (1)    Access

The allegations in the Amended Complaint focus primarily on Fielding, asserting that he helped develop the copyrighted source code. It essentially alleges that Fielding, who had access to the source code per his involvement in developing it, later marketed, sold, distributed or otherwise made it available for third-party use through a program based on the same source code. *Amended Complaint,* ¶¶ 22-24, Dkt. 12.

The Amended Complaint further alleges that all defendants, which would include BH&A, also marketed, sold, distributed or otherwise made the source code available for third-party use through similar programs. Although the Amended Complaint could be a little more clear about the relationship between Fielding and BH&A, it seems apparent Plaintiffs are alleging that BH&A gained access to the copyrighted material through Fielding. These allegations may not be enough to survive summary judgment, but they are enough to sufficiently allege BH&A had access to the copyrighted material to survive the motion to dismiss.

### (2)    Substantial Similarity

BH&A next argues that the Amended Complaint does not sufficiently allege that the programs used or sold by them are substantially similar to the protectable elements of

Asset Vision's source code. As noted above, Ninth Circuit precedent on how the Court should address indirect evidence of copying is somewhat disjointed. According to *Funky Films*, "[t]he substantial-similarity test contains an extrinsic and intrinsic component." Id. at 1077. At the summary judgment stage, "courts apply only the extrinsic test; the intrinsic test, which examines an ordinary person's subjective impressions of the similarities between two works, is exclusively the province of the jury." Id. at 1077; *see also Benay*, 607 F.3d at 624.

The more recent Ninth Circuit case, *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904 (9th Cir. 2010), takes a slightly different approach. It also applies the two-part extrinsic/intrinsic test. However, in *Mattel*, the Ninth Circuit did not say that the two-part extrinsic/intrinsic inquiry is the process for determining whether the products are "substantially similar." Instead, it stated that at the initial extrinsic stage, the Court must "examine the similarities between the copyrighted and challenged works and then determine whether the similar elements are protectable or unprotectable." *Id*. at 913. Ideas, standard features, and unoriginal components are not protectable. *Id*. After filtering them out, "what's left is the author's particular expression of an idea, which most definitely is protectable." *Id*. (emphasis removed).

To make that determination, the *Mattel* court stated that a court must begin by considering the breadth of the copyright protection. It noted that because others may legally copy a work's ideas and other unprotectable elements, the Court must start "by determining the breadth of the possible expression of those ideas." *Mattel*, 616 F.3d at

913. "If there's a wide range of expression (for example, there are gazillions of ways to make an aliens-attack movie), then copyright protection is 'broad' and a work will infringe if it's 'substantially similar' to the copyrighted work." *Id*. at 913-14. "If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually identical'" to the copyrighted work Id. at 914. The Mattel court went on to state that "[t]he standard for infringement – substantially similar or virtually identical – determined at the 'extrinsic' stage is applied at the 'intrinsic' stage." Id. at 914 (citing *Apple Computer, Inc., v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994). "There – [at the intrinsic stage] – we ask, most often of juries, whether an ordinary reasonable observer would consider the copyrighted and challenged works substantially similar (or virtually identical)." *Id*.

This Court wrestled with these nuances in its recent decision in *Scentsy, Inc. v. B.R. Chase, LLC,* 942 F.supp.2d 1045 (D.Idaho 2013). The Court makes this observation, and gives the parties this background, for two reasons here. First, to inform the parties about the potential issues which may arise on summary judgment. Second, and more important to the pending motion, the Court makes these observations to make clear that these are issues which should be addressed at summary judgment, not on a motion to dismiss. Here, the Court is only concerned with whether the pleadings are sufficient to state a valid claim for copyright infringement. The Court finds that they are.

Although Plaintiffs may not have identified portions of the Asset Vision source code which were specifically copied, Plaintiffs allege that the programs used by the defendants perform substantially the same function as, and were based on or incorporated into, the Asset Vision source code. These allegations are sufficient to allege that the works are substantially similar or virtually identical to survive a motion to dismiss.

**2.     Contributory Infringement Claim**

To prove contributory copyright infringement, a plaintiff must prove that the defendant "(1) knew of the direct infringement; and (2) they either induced, caused, or materially contributed to the infringing conduct." *Luvdarts, LLC v. AT&T Mobility, LLC,* 710 F.3d 1068, 1072 (9th Cir. 2013) (Internal citation omitted). Here, the Amended Complaint does nothing more than recite the law and make a conclusory statement that BH&A provided Asset Vision source code to third parties.

To establish the defendant knew of the direct infringement "requires more than a generalized knowledge . . . of the possibility of infringement." *Id.* at 1072. Contributory liability requires actual knowledge of specific acts of infringement. *Id.* Asset Vision makes no specific allegation that BH&A had the requisite knowledge of infringement by a third party. *Id.*  Likewise, Asset Vision fails to identify any specific third party who directly infringed the claimed copyright. Moreover, Asset Vision makes no specific allegation of how BH&A induced these unidentified third parties to infringe the copyright. Under these circumstances, the Court will grant the motion to dismiss the contributory infringement claim.

3.      **Preemption of State Law Claims**

The federal Copyright Act expressly preempts state common law and statutory claims arising under rights within the subject matter of the Copyright Act. 17 U.S.C. § 301. BH&A argues that both Plaintiffs' tortious interference and civil conspiracy claims are preempted by the Copyright Act.

The Ninth Circuit has adopted a two-part test to determine whether a state law claim is preempted by the Copyright Act. First, a court must "determine whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." *Laws v. Sony Music Entertainment, Inc.,* 448 F.3d 1134, 1137 (9th Cir. 2006). If it does, the court must then "determine whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Id.* at 1138.

A.      **Tortious Interference Claim**

The first prong of the preemption test is easily satisfied with regard to the tortious interference claim. The Asset Vision source code is the subject matter of Plaintiffs' tortious interference claim. Nothing in the Amended Complaint suggests that the subject matter of the tortious interference claim extends beyond that – which is also the subject matter of copyright.

The second prong of the preemption test is also satisfied. The exclusive right to use or distribute the Asset Vision source code forms the basis of the tortious interference claim. That is, Plaintiffs allege that BH&A interfered with their exclusive right to

distribute the Asset Vision software. To the extent Plaintiffs have an exclusive right to distribute the Asset Vision software, that right is conferred by the Copyright Act.

The elements of a claim for tortious interference in Idaho are "(1) the existence of a valid economic expectancy, (2) knowledge of the expectancy on the part of the interferer, (3) intentional interference inducing termination of the expectancy, (4) the interference was wrongful by some measure beyond the fact of the interference itself, and (5) resulting damage to the plaintiff whose expectancy has been disrupted." *Wesco Autobody Supply, Inc. v. Ernest*, 243 P.3d 1069, 1081 (Idaho 2010). In this case, Plaintiffs' claimed economic expectancy is to be the exclusive source from which customers can obtain or use the Asset Vision source code. Such a right is conferred by the Copyright Act. Accordingly, if Plaintiffs have the exclusive right to distribute the Asset Vision source code, and if BH&A violated that right by distributing it, BH&A's conduct would fall squarely within the subject matter of the Copyright Act. Thus, the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders. Accordingly, the Court will dismiss the tortious interference claim because it is preempted by the Copyright Act.

### B.    Civil Conspiracy

Like the tortious interference claim, the first prong of the preemption test is easily satisfied with regard to the civil conspiracy claim. The Asset Vision source code is the subject matter of Plaintiffs' civil conspiracy claim. As with the tortious interference

claim, nothing in the Amended Complaint suggests that the subject matter of the civil conspiracy claim extends beyond that – which is also the subject matter of copyright.

The second prong is likewise satisfied. The alleged wrongful act in the conspiracy claim is copyright infringement. Such conduct would be a violation of the Copyright Act. Moreover, in Idaho, a claim for civil conspiracy requires "an agreement between two or more to accomplish an unlawful objective or to accomplish a lawful objective in an unlawful manner." *Taylor v. McNichols*, 243 P.3d 642, 660 (Idaho 2010). Notably, though, "[c]ivil conspiracy is not, by itself, a claim for relief. The essence of a cause of action for civil conspiracy is the civil wrong committed as the objective of the conspiracy, not the conspiracy itself." *Id.* The Amended Complaint makes no allegations of wrong other than the allegations that BH&A infringed on Plaintiffs' copyright. Therefore, the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders. *Laws,* 448 F.3d at 1138. Accordingly, the Court will also dismiss the civil conspiracy claim.

## 4.      Leave to Amend

In accordance with Ninth Circuit precendent, the Court will grant Asset Vision leave to amend its Amended Complaint on the contributory infringement claim because the Court has not determined that the pleading could not possibly be cured by the allegation of other facts.  *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 247 (9th Cir. 1990). If Plaintiffs amend their complaint, they must make more specific allegations that BH&A had the requisite specific knowledge of

infringement, identify any specific third parties who directly infringed the claimed copyright, and allege how BH&A induced these unidentified third parties to infringe the copyright.

With respect to the state law claims, the Court will not grant leave to amend. The Amended Complaint could not be cured as to these claims – they are preempted by the Copyright Act.

**ORDER**

**IT IS ORDERED:**

1.      Brad Hall & Associates, Inc.'s Motion to Dismiss First Amended Complaint (Dkt. 27) is **GRANTED in part** and **DENIED in part** as explained above. Plaintiffs may file an Amended Complaint on or before **December 31, 2013**.



DATED: December 17, 2013

B. Lynn Winmill
Chief Judge
United States District Court